No. 2113.—City National Bank *v.* Eliza E. Barrow and Husband, A. Miltenberger & Co., Intervenors.

The signature of the husband to a note and mortgage to secure its payment, executed by the wife, is a sufficient authorization by the husband for the endorsement of the note by the wife.

Where an act of mortgage declares the object mortgaged to be the entire interest in a certain parish named, giving the number of acres, and mentioning the river on and near which it lies, and by which it is bounded, with a reference to certain titles of the mortgager to be found in the office of the Recorder of Mortgages for the parish, the description of the property is sufficient. 2 An. 253, 371.

APPEAL from the Seventh Judicial District Court, parish of West Feliciana. *Cooley, J. Race, Foster & E. T. Merrick* and *S. J. Powell,* for plaintiff, *Campbell, Spofford & Campbell* and *Collins & Leake,* for defendants.

Howe, J. This action was brought to recover the amount of three promissory notes, in all the sum of $10,000, drawn by Eliza E. Barrow, to the order of herself and by her indorsed in blank, dated November 25, 1865, and secured by mortgage on the following described property.

"Her entire landed interest in the aforesaid parish of West Feliciana, situated on and adjacent to the Mississippi river, and composed of thirty-eight hundred acres of land more or less, as per acts of sale to be found at my (the parish recorder's) office in the town of St. Francisville, parish aforesaid."

The plaintiff asked also that its mortgage be recognized and enforced upon eight tracts of land specifically described in the petition and alleged to compose the property embraced in the very general description quoted above.

It appears that Mrs. Barrow was separated in property from her husband by judgment of February 25, 1853. The notes and mortgage are signed by her husband, apparently for the purpose of authorizing her execution of them.

A. Miltenberger & Co. intervened, setting up a general mortgage on these lands in virtue of a judgment against Mrs. Barrow, recorded June 16, 1866, and averring the insolvency of Mrs. Barrow, and the nullity of the notes on which the plaintiff's action was brought. They alleged that no consideration was paid for them to Mrs. Barrow, or to any one for her separate benefit, that she was not authorized to indorse them; that the mortgage does not comply with the provisions of the law of 1855, authorizing married women to contract debts and mortgage their property, and that the mortgage does not state the precise nature and situation of each of the immovables on which said mortgage is granted.

They prayed that the notes might be canceled and annulled.

The plaintiffs filed the plea of prescription of one year to this intervention, it having been filed December 23, 1867, but this plea the court properly overruled. The plaintiff sues to enforce a mortgage claimed to be prior to that of intervenors. The latter claim that it is no mortgage, by reason of sundry alleged nullities, and they further urge, as will be seen hereafter, that it can, at any rate, only affect a portion of the lands of Mrs. Barrow which the bank aims to make subject to its grasp. The action of the intervenors seems to be something more than the action of nullity mentioned in the Civil Code in articles 1965 to 1989 inclusive.

There was judgment in favor of plaintiffs for the amount of one of the notes, $3333 33, with interest as claimed, and with recognition of mortgage as claimed on the eight tracts of land described in the petition, and in favor of defendants and against the plaintiff as in case of nonsuit as to the other notes, and the claim of intervenors was dismissed.

The intervenors only have appealed.

So far as the question of consideration is concerned the judgment as to amount appears to be fully sustained.

As to the authorization of the husband for the indorsement in blank by the wife, we think the requirements of law were met by the signature of the husband to the note and mortgage. It can hardly be necessary to require the husband after authorizing the execution by his wife of a note and its accessary obligation to also give a separate authority for her indorsement in blank which in no manner increases her

liability, but only carried into practical effect the obligation recognized and secured by the mortgage.

As to the law of 1855, invoked by intervenors, it will be observed that its object is explained in its title, which declares it to be "an act to enable married women to contract debts and bind their paraphernal or dotal property." Act of 1855, page 254.

Its effect is to dispense the creditor, by an observance of its formalities from the obligation which would otherwise exist, and exists in this case, to prove that the money advanced by him was actually applied for the benefit of the wife. See § 3.

But it does not seem to invalidate an obligation contracted, as in this case, by a married woman, separated in property, and authorized by her husband, where the creditor proves that the money advanced was actually received by the debtor for the advantage of her separate property.

The last point made by the intervenors is that the description of the property mortgaged is insufficient. We do not think the point tenable. The description is inartificial, but it can hardly be said to be insufficient. In the first place it declares the object mortgaged to be "her entire landed interest in the parish of West Feliciana;" in the second place it is stated to comprise three thousand eight hundred acres more or *less;* in the third place it is stated to be on and adjacent to the Mississippi river; and finally it refers to certain titles of the mortgager to be found in the office of the recorder, and to which we will again allude.

In Ells *v.* Sims, 2 Ann. 253, the property was described as follows: "my land situate on the Mississippi river in said parish of Concordia, bounded by lands of E. P. King, above and below, and back by lands of the United States," and this was held sufficient in the following language:

"A distinction may be fairly made between urban and rural estates, and greater minuteness and accuracy of detail might properly be required in the former than in the latter case. The question is whether any one contracting with Sims, or in any wise trusting him, or interested as a creditor, would have been misled or kept in the dark by the omission to state the township, range, section, and *the quantity of acres* in Sims' tract. We think not, and are of opinion that in this case there has been a fair compliance with the requisition of law that the mortgage and its registry shall state precisely the nature and situation of the property."

In Baker *v.* Bank of Louisiana, 2 Ann. 371, the court reiterated the reason of the rule, and held the following description sufficient:

"A certain tract, or a parcel of ground, with the improvements thereon, situate, lying and being in said parish, on the Bayou Tunica, being the land and plantation purchased by the said Samuel Wimbesh,

City National Bank v. Eliza E. Barrow and Husband, A. Miltenberger & Co., Intervenors.

at the probate sale of Samuel Davis, deceased, containing five hundred and eight acres."

In the. case at bar the description, poor as it is, is in one respect better than the one lastly quoted, for it declares the property to be all the mortgager has in the parish, and if we apply the test of notice, it will appear simply impossible that the intervenors could have been misled or prejudiced by what they allege to be an insufficiency of description. The debt due them was contracted in 1861. The plaintiff's mortgage was executed in 1865. The intervenors' judicial mortgage resulted from a confession of judgment in 1866.

It is however urged by intervenors that if this description be held sufficient the extent of the property is limited by the phrase "as per acts of sale to be found in my office in the town of St. Francisville," and can embrace only such lands as were included in the four acts of sale there recorded, and that four patents embracing twelve hundred and sixty-nine and sixty-six one hundredths acres of the land in controversy were not recorded until June 30, 1866, after the judicial mortgage had attached. We think this position untenable.

The mortgager hypothecated her entire landed interest in the parish, and at that time she owned the lands embraced in the four patents. She described it as embracing about three thousand eight hundred acres, and the amount of the eight tracts corresponds with that portion of the description. We regard the reference, "as per acts of sale" etc., not as limiting the previous portion of the description but as merely explaining it pro tanto.

It is therefore ordered that the judgment appealed from be affirmed with costs.